United States District Court
Middle District of Florida
Tampa Division

KADIN BROCK,

    *Plaintiff,*

v.                             **NO. 8:24-cv-2256-PDB**

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

---

# Order

Kadin Brock challenges the Commissioner of Social Security's decision denying her application for supplemental security income. Doc. 1. The procedural history, administrative record, and general law are summarized in the ALJ's decision, Tr. 17–43, and the parties' briefs, Docs. 15, 20, and not fully repeated here.

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoted authority omitted). The threshold is "not high," and courts generally defer to the ALJ, who has "seen the hearing up close." *Id.* at 103, 108.

Brock argues that the ALJ failed to properly account for the severity, frequency, and duration of her migraines because, despite finding that they are severe impairments, the residual functional capacity (RFC) fails to include limitations to accommodate them other than restricting her exposure to excessive noise and vibration. Doc. 15 at 3. The Commissioner argues that Brock improperly asks the court to reweigh the evidence. Doc. 6–9.

An RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). An ALJ assesses the RFC based on all relevant record evidence. *Id.* An ALJ need not refer to all evidence in the decision, as long as the decision makes clear that the ALJ considered the claimant's "medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

An ALJ must consider a claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence. *Id.* § 416.929(a). Factors for consideration include:

> (i)    [the claimant's] daily activities;
>
> (ii)   [t]he location, duration, frequency, and intensity of … pain or other symptoms;
>
> (iii)  [p]recipitating and aggravating factors;
>
> (iv)   [t]he type, dosage, effectiveness, and side effects of any medication [that the claimant] take[s] or ha[s] taken to alleviate … pain or other symptoms;
>
> (v)    [t]reatment, other than medication, [that the claimant] receive[s] or ha[s] received for relief of … pain or other symptoms; [and]
>
> (vi)   [a]ny measures [the claimant] use[s] or ha[s] used to relieve … pain or other symptoms[.]

*Id*. § 416.929(c)(3)(i)–(vi). An ALJ will consider the claimant's "statements about the intensity, persistence, and limiting effects of … symptoms" and evaluate the statements "in relation to the objective medical evidence and other evidence." *Id*. § 416.929(c)(4). An ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts" between the claimant's statements and the other evidence. *Id*.

In a report, Brock alleged that she has "sever [sic] light sensitivity" because of migraines, making "sitting at a computer for long periods … impossible." Tr. 277. She alleged that her memory problems make retaining new information difficult. Tr. 277. She alleged that migraines cause her nausea, vomiting, and light-sensitivity, and that she must "isolate herself in a dark, quiet room." Tr. 252. She alleged that, to calm her anxiety, she meditates, practices yoga, and plays video games. Tr. 245.

In a questionnaire, Brock reported having daily headaches caused by "[l]oud noises, bright or flashing lights[,] some pitches in music, [and] smells." Tr. 290. She alleged that her migraines last four to five days and her daily headaches "never go[] completely away." Tr. 291. She explained that she must "lay in [a] dark room [with] ice packs on [her] head and neck." Tr. 291. She reported being "very sensitive to noise and light." Tr. 291.

At an April 2024 administrative hearing, Brock, then age 27, gave this testimony. She last worked in February 2018. Tr. 65. She drives, but not at night or in the rain because of "severe stigmatism [sic] from … migraines and [she] can't really see well." Tr. 64. She cannot take the trash out, and she needs help watering her plants. Tr. 64. Transferring laundry from the washing machine to the dryer causes her shoulders to dislocate. Tr. 64. She experiences daily headaches lasting twenty minutes to two or more weeks. Tr. 65. She had

3

been receiving Botox injections. Tr. 65. She has "severe[,] chronic pain from … chronic migraines and headaches," which sometimes hinders her ability to communicate and understand. Tr. 65. She cannot go outside without wearing special sunglasses because her eyes are sensitive to light. Tr. 66. She must use special filters on her phone and, when she goes into stores, must wear special glasses so that she does not get a migraine. Tr. 66. She must wear special glasses at home, "otherwise [she] will probably end up with a migraine within the next three days." Tr. 67. The ALJ questioned Brock's statements that she had migraines or headaches daily compared to her statements about preventative measures. Tr. 68. Brock testified:

> I always have a headache, 24/7. Sometimes it's not very intense. Sometimes it's so intense I can't open my eyes or move. But my head always hurts. Migraines are different. The pain is much more intense. And I can't really talk or function. A headache I can still like, function with but it depends on the severity of it.

Tr. 68. Brock continued with this testimony. When she has a migraine, which happens "three and upwards of six times" a month, she is unable to do anything and lies in bed and tries to sleep. Tr. 68–69. She has trouble focusing on one thing for more than 20 minutes, finishing what she starts, and getting along with other people. Tr. 73.

The ALJ found that Brock has the RFC to perform medium work, with additional limitations:

> [Brock] can frequently balance, crouch, kneel, and stoop. She can occasionally climb ramps and stairs, but should never crawl or climb ladders, ropes, and scaffolds. She must avoid even moderate exposure to extreme cold, excessive noise, and vibration. [Brock] can perform simple tasks. She can have no interaction with the public and occasional interaction with coworkers and supervisors. She cannot participate in tandem tasks. She must have low stress jobs

4

> defined as having occasional decision making required and having
> occasional changes in the work setting.

Tr. 23.

The ALJ summarized Brock's allegations and testimony, including about light-sensitivity, severe pain, communication difficulties, and confusion. *See* Tr. 24. The ALJ found that Brock's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and "are not supported by the record as a whole." Tr. 24–25. The ALJ explained, "The evidence demonstrates [that Brock] has the retained ability to perform work at the medium level with additional postural limitations to accommodate reduced capabilities caused by migraines and cardiac arrythmias. Migraines and headaches are a constant complaint throughout the records and [Brock] receives care from a neurologist with medications and Botox injections. (Exhibits B2F, B11F, B14F, B18F, B20F)." Tr. 25.

The ALJ observed that Brock's most prominent complaint appears to be migraines, for which Brock has seen multiple specialists, including a neurologist, an ENT, an allergist, an ophthalmologist, and a pain manager. Tr. 25. The ALJ observed that Brock "complains of persistent headaches and migraines, but she has normal neurological findings." Tr. 25. The ALJ summarized notes from Brock's treatment with the specialists. Tr. 26–37. The ALJ observed that Brock reported to her pain manager 100% relief of headaches with Botox in February 2024. Tr. 37 (citing B29F/7). The ALJ observed that Brock's therapist noted exaggeration by Brock on multiple

occasions. Tr. 26, Tr. 30 (citing B12F/91), Tr. 31 (citing B12F/103, 121), Tr. 32 (citing B12F/145, 151; B26F/16), Tr. 33 (citing B26F/19).

The ALJ found that Brock's "allegations of disability are not consistent with the overall evidence [primarily because] the objective medical and mental health records do not establish conditions that produced disabling limitations." Tr. 37. The ALJ explained that the "record reflects no limitations in [Brock's] activities of daily living greater than those as reflected in the [RFC]." Tr. 37. The ALJ observed that Brock described her typical day to include meditating, practicing yoga, or playing video games to lessen her anxiety, Tr. 37; Brock stated that she could drive a car and go out alone if she was very familiar with the place, Tr. 37; Brock indicated that she spends time online playing games with friends and enjoys researching and reading about herbal plants, Tr. 38; Brock stated that she checks her plants outside unless it is too hot; and Brock stated that she medicates with cannabis and delta 8 THC, Tr. 38.

The ALJ considered the location, duration, frequency, and intensity of Brock's pain:

> The record documents complaints of migraines, headaches, and a variety of mental health symptoms and that [Brock] has sought treatment for her symptoms. However, the frequency and intensity of her symptoms as shown in the evidence do not support the need for greater limitations. Further, the aggravating factors were considered and accommodated in the [RFC]. [Brock] is limited to medium work with additional postural and environmental limitations in order to avoid exacerbation of her migraines, headaches, or other pain symptoms. She also has limited interactions with others and is limited to low stress jobs to accommodate her mental health impairments.

Tr. 39. The ALJ also considered Brock's medications and found that her "use of medications does not suggest the presence of an impairment that is more

limiting than found in this decision." Tr. 39. The ALJ concluded, "Viewing all of the evidence together, the undersigned finds that [Brock]'s subjective allegations of disability cannot reasonably be accepted as consistent with the objective medical evidence and other evidence in this case record." Tr. 39.

A state agency medical consultant at the reconsideration level opined that Brock could perform work at the medium exertion level and attributed to Brock's migraines postural and environmental limitations consistent with those included in the ALJ's ultimate RFC. Tr. 100. The ALJ found that the consultant's explanation supported the limitations and that the limitations were "consistent with the overall evidence showing persistent complaints of migraines with some improvement with treatment." Tr. 39–40 (citing B2F, B11F, B14F, B18F, B20F).

Contrary to Brock's argument, the ALJ adequately accounted for her migraines in the RFC, and substantial evidence supports the decision. The ALJ acknowledged Brock's complaints of severe, chronic pain from migraines, causing light sensitivity and difficulty functioning. Tr. 24. The ALJ recounted Brock's medical history and complaints and found that the evidence did not support her assertions on the intensity, persistence, and limiting effects of her migraines. Tr. 24. The ALJ noted that although Brock complained of persistent headaches and migraines, she had normal neurological findings, Tr. 25, and she reported 100% relief after a Botox injection in early 2024. Tr. 34. The ALJ noted that Brock's therapist repeatedly reported that Brock exaggerated her symptoms. Tr. 26. The ALJ found that the record shows Brock has no limitation to her activities of daily living greater than those included in the RFC. Tr. 37. The ALJ considered aggravating factors and accounted for them, to the extent they were supported by the record, by limiting Brock to jobs that

7

avoid even moderate exposure to extreme cold, excessive noise, and vibration. Tr. 23, 39. The ALJ explained that the environmental limitations were included "to avoid exacerbation of [Brock's] migraines, headaches, or other pain symptoms." Tr. 39. The decision makes clear that the ALJ considered the severe impairment in light of the entire record and included limitations that he found the record supported.

Brock complains, "There is no accommodation for light sensitivity at all in the ALJ's RFC and no explanation for this." Doc. 15 at 4. Brock is correct that the ALJ did not specifically address why the RFC includes no limitation concerning light sensitivity. But the decision makes clear that the ALJ did not include such a limitation based on his consideration of the entire record, which includes evidence that Brock was able to adjust her activities of daily living for her light sensitivity. For example, she wears sunglasses to go outside and drive during the day, Tr. 66, 247, 250, 283; uses special glasses to filter light at home and in stores, Tr. 66–67; and uses special filters on her TV and phone to play video games, watch TV, and watch videos on her phone, Tr. 67, 245, 248, 297.

Brock argues that the limitations of simple work, low-stress jobs, and medium work do not account for her migraines. Doc. 15 at 4. She contends the postural and environmental limitations fail to address her migraines, Doc. 15 at 4; and she cites evidence that she contends supports "greater functional limitations such as absenteeism, [the] inability to be around bright light, [the] need[ for] additional breaks[,] and [the] inability to sustain concentration that would not exceed off[-]task behavior allowances in a work setting." Doc. 15 at 4–7. Brock fails to show the absence of substantial evidence supporting the ALJ's findings. Although the ALJ did not discuss in the same detail the evidence that Brock does, the ALJ provided enough detail to make clear that

he considered the record as a whole, and substantial evidence supports the decision.

Brock points out that in *Raduc v. Commissioner of Social Security*, 380 F. App'x 896, 898 (11th Cir. 2010), the Eleventh Circuit reversed because the ALJ failed to discuss how the claimant's irritable bowel syndrome might affect her ability to perform her job duties. Doc. 15 at 7–8. Brock also cites these cases for the proposition that courts in this district "have remanded when migraines are found to be a severe impairment by the ALJ, but the ALJ fails to account for them in the RFC finding": *Reis ex rel. Reis v. Astrue*, No. 8:11-cv-2027-TGW, 2012 WL 3231092, at *4 (M.D. Fla. Dec. 5, 2012); *Battles v. Colvin*, No. 8:15-cv-339-VMC-TGW, 2016 WL 3360428, at *1 (M.D. Fla. May 20, 2016), *report and recommendation adopted sub nom. Battles v. Commissioner of Social Security*, 2016 WL 3258423, at *3 (M.D. Fla. June 14, 2016); *Gurske v. Commissioner of Social Security*, No. 6:17-cv-2050-DNF, 2019 WL 643722, at *3 (M.D. Fla. Feb. 15, 2019); *Hill v. Saul*, No 8:19-cv-121-TGW, 2020 WL 1430917, at *4 (M.D. Fla. Mar. 24, 2020); *Nance v. Commissioner of Social Security,* No. 8:20-cv-507-NPM, 2021 WL 4305093, at *4–5 (M.D. Fla. Sept. 22, 2021). Doc. 15 at 8. These non-binding and factually unique cases do not help Brock. Unlike the ALJ in *Raduc* and the other cases, the ALJ here discussed the effects of Brock's migraines and accounted for them in the RFC. *See* Tr. 23, 39.

Brock also argues that the ALJ failed to properly consider the persuasiveness of the medical opinions of Kathryn Bliss, L.M.H.C. (her therapist) and Kyle Cieply, Ph.D. (an examining psychologist). Doc. 15 at 9. The Commissioner disagrees and responds that the ALJ adequately explained

his persuasiveness finding considering the most important factors of supportability and consistency. Doc. 20 at 9.

In 2017, the Social Security Administration revised its medical evidence rules. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revisions include redefining terms related to evidence; revising how the agency considers medical opinions and prior administrative medical findings; and revising rules about treating sources. *Id.* The revised rules apply to claims filed on or after March 27, 2017. *Id.*

Under the revised rules, "[o]bjective medical evidence" is "medical signs, laboratory findings, or both[.]" 20 C.F.R. § 416.913(a)(1). A "medical opinion" is "a statement from a medical source about what [a claimant] can still do despite … impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in:

> (A) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* § 416.913(a)(2)(i). "Other medical evidence" is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 416.913(a)(3).

The old rules required an ALJ to "give more weight" to a treating physician's medical opinion absent good cause to the contrary. *Id.* § 416.927(c)(2); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). The revised rules abrogate Eleventh Circuit precedent applying the treating-physician rule, *see Harner*, 38 F.4th at 896, and no longer use the term "treating source," *compare* 20 C.F.R. § 416.913, *with id.* § 416.927.

Under the revised rules, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 416.920c(c)(1)–(5).

The most important factors are supportability and consistency, and the ALJ must explain how he considered them. *Id.* § 416.920c(a), (b)(2). Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.*

§ 416.920c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

In June 2021, Dr. Cieply conducted a neuropsychological evaluation of Brock and administered tests. Tr. 621–32. He stated, "[Brock] has normal results on cognitive measures, though most self-report measures suggest a level of over-report invalidating her findings." Tr. 626. He observed that, based on a rating scale, Brock's responses to a symptom checklist related to attention deficit hyperactivity disorder fell "in the 'Marked' range for symptoms of the disorder" and indicated "severe inattention and hyperactivity-impulsivity." Tr. 628. He explained the results of cognitive testing:

> [Brock]'s cognitive test results are likely an accurate representation of her current functional status, though self-report likely over-estimate[s] the extent and severity of psychiatric problems as most standardized measures suggest possible validity concerns based on the level of over-reporting.
>
> …
>
> Emotionally, there is evidence of a severe number of symptoms of depression and anxiety. There are also evident problems managing past traumas and history of panic attacks. There are concerns about the level of suicidal ideation and indications of hopelessness. … [Brock] is at risk for significant behavioral and social difficulties.

Tr. 630–31.

Dr. Cieply provided these clinical impressions:

> Overall, there is limited evidence of cognitive impairment[,] and the results are consistent with pre-morbid expectations based on age, acquired education, and previous occupations. Any variability amongst individual test results during the evaluation is the result of the severity of psychiatric illness evident on every self-report measure. These apparent psychiatric factors could lower the efficiency of her cognitive functioning and raise her awareness of many functional problems not actually evident during the testing session. In addition, some functional problems could also occur secondary [Brock]'s reported history of reading[-]based learning disability (i.e., dyslexia) and medical ailments (including chronic pain) resulting in a disabled status.
>
> The findings suggest levels of depression (with exceptionally low self-esteem and vague suicidal ideation) and anxiety (with panic attacks) more consistent with hospitalized psychiatric patients. Some evident problems managing stress are likely the result of [Post-Traumatic Stress Disorder (PTSD)] secondary multiple traumas as an adolescent. Bipolar II Disorder is a future possibility with further monitoring by her health care professionals[,] as the current results provide more evidence of Borderline Personality Disorder. Ultimately, [Brock] is in a very overwhelmed state and in need of supportive treatment through her mental health professionals responsible for her care. On the other hand, the results provide limited evidence of O[bsessive-]C[ompulsive ]D[isorder]. Although there are some subtle tendencies evident, these symptoms are more consistent with the severity of anxiety on testing. There is also limited evidence of Attention-Deficit/Hyperactivity Disorder.

Tr. 631.

Dr. Cieply provided this recommendation:

> Psychiatric symptoms are very concerning at this time. As such, [Brock] should continue ongoing outpatient psychiatric follow-up as a means of managing psychopharmacological means of treating symptoms at the discretion of her treatment provider[,] with regular psychosocial counseling as a means of improving her coping mechanisms and addressing behavioral / social issues evident on testing. … .

13

Tr. 632.

In April 2024, L.M.H.C. Bliss completed a mental capacity source statement form and listed these diagnoses: "Major Depressive Disorder, recurrent, moderate"; "[P]ost[-]Traumatic Stress Disorder"; "Attention-Deficit/Hyperactivity Disorder, Combined Presentation"; and "Borderline Personality Disorder." Tr. 1752–54. Through a checklist, she opined that Brock had "marked" limitations in these areas of mental work-related functioning:

- [t]he ability to maintain attention and concentration [f]or extended periods;

- [t]he ability to perform activities within a schedule, [m]aintain regular attendance, and be punctual [w]ithin customary limits;

- [t]he ability to sustain an ordinary routine without [s]pecial supervision;

- [t]he ability to complete a normal workday [w]ithout interruptions from psychological [b]ased symptoms; and

- [t]he ability to interact appropriately with the [g]eneral public.

Tr. 1752–53. Through a checklist, she opined that Brock had "extreme" limitations in these areas of mental work-related functioning:

- [t]he ability to carry out detailed instructions;

- [t]he ability to work in coordination with or in [p]roximity to others without being distracted [b]y them;

- [t]he ability to complete a [n]ormal workweek without interruptions from psychologically based symptoms;

- [t]he ability to perform as a consistent pace with a one hour lunch break and two 15 minutes rest periods;

- [t]he ability to get along with coworkers or [p]eers without distracting them or exhibiting [b]ehavioral extremes; and

14

- [t]he ability to travel in unfamiliar places or [u]se public transportation.

Tr. 1752–53. The form defines "marked" as: "The individual has limitations functioning in this area, two thirds of an eight hour work day." Tr. 1752. The form defines "extreme" as: "There is major limitation in this area. There is no useful ability to function in this area." Tr. 1752. Under the instruction, "Describe the medical/[c]linical findings that support this assessment," L.M.H.C. Bliss includes no description. Tr. 1753. Through a checklist, she states that her opinion was based on direct observation/treatment, patient report, psychological/psychiatric evaluations, and counseling/therapy records. Tr. 1754.

The ALJ evaluated Dr. Cieply's report:

> The opinion of the examining psychologist, Kyle R. Cieply, Ph.D., is not persuasive (Exhibit B4F). Dr. Cieply did not provide an opinion of functioning, noted a suggestion of over-reporting, and pointed out inconsistencies between the severity of symptoms reported and the findings of the evaluation. Moreover, the other evidence of record does not support the statement of [Brock] being "in a very overwhelmed state." The overall evidence is consistent with mental impairments causing moderate limitations, but is not consistent with symptoms showing greater deficits tha[n] accommodated herein. The mental health records note exaggeration on the part of [Brock]. Her therapist documented exaggeration on numerous occasions with times when [Brock] would fail to cease the behavior (Exhibits B4F; B12F/91, 103, 121, 140, 151; B26F/16, 19, 58, 60; B30F/8). Moreover, the evidence shows she has the ability to interact with those she knows and is characterized as comfortable during appointments (Exhibits B2F/15–16; B3F/5; B4F/12; B9F/3, 22; B10F/32–37, 40–44; B11F/31; B17F/61; B25F; B37F/12). She is also characterized as pleasant and cooperative (Exhibits B1F/149–150, 209–210; B4F/6; B10F/18–21, 32–37; B12F/2; B21F/25; B27F/5; B37F/12). Furthermore, [Brock] was able to interact appropriately with both consultative examiners and was cooperative during both appointments (Exhibit B22F, B23F). In addition, she told her therapist she was assisting her mother care for a sick friend for over a year (Exhibit B26F/2, 16, 92). Lastly, the evidence shows [Brock]

15

has adapted her daily activities to accommodate her limitations suggesting she has the ability to adapt to change. (Exhibits B5E, B6E, B10E, B12E).

Tr. 40.

The ALJ evaluated these opinions, including the opinions of L.M.H.C. Bliss:

> The opinions of Jeanne Utterback, [Brock]'s physical therapist, dated April 1, 2024, opinion of [her] therapist, Kathryn Bliss, LMHC, and the opinion of Abraham Fura, M.D., [her] pain management provider, are not persuasive (Exhibits B33F, B34F, B35F, B36F). The treating opinions are not supported by adequate explanation and also are not consistent with [Brock's] testimony and information in her function reports and physical therapy records. For example, Ms. Utterback noted findings of joint hypermobility, which is not documented elsewhere in objective findings. She also noted instability of the spine, which is also not show[n] in the numerous physical examinations in the evidence documenting normal musculoskeletal and normal neurological findings (Exhibits B2F/1–3, 7–8, 10–11, 15–16; B3F/5; B4F/12; B9F/3, 22; B10F/40–44; B11F/10, 25; B17F/53, 61; B21F/25). If [Brock] were as bad as stated by the treating providers, [she] could not drive. Moreover, [Brock] testified she could lift ten pounds, which [is] inconsistent with portions of the treating opinions. The information in the mental health treatment records do not support marked and extreme limitation in functioning and Ms. Bliss did not provide information to explain the rating of marked and extreme difficulty. For example, there is no evidence to support marked difficulty getting along [with] the general public. [Brock] was shown to interact appropriate[ly] with the consultative examiners and was noted throughout the records as very pleasant and cooperative (Exhibits B1F/149–150, 209–210; B4F/6; B10F/18–21, 32–37; B12F/2; B21F/25; B22F; B23F; B27F/5; B37F/12). In addition, she told her therapist she was assisting her mother care for a sick friend for over a year (Exhibit B26F/2, 16, 92). Furthermore, the evidence shows [Brock] has the ability to interact with those she knows and is characterized as comfortable during appointments (Exhibits B2F/15–16; B3F/5; B4F/12; B9F/3, 22; B10F/32–37, 40–44; B11F/31; B17F/61; B25F; B37F/12). The opinion of Dr. Fura is not consistent with the pain management records. While there are findings of reduced and painful range of motion of the cervical spine[,] and cervical facet

16

maneuvers were positive bilaterally[,] there is also reporting of improvement with treatment (Exhibits B21F, B27F, B29F). Moreover, the opinions provided are not consistent with [Brock]'s reported daily activities, which having included going shopping all around town with her mother, multiple arts and crafts projects, tending herb gardens, research of symptoms and other areas of interest, going to the Tampa Aquarium with family, attending an art exhibition, and assisting her mother with the care of a sick friend (Exhibits B1F/173; B12F/55, 61, 67; B26F/2, 16, 19, 22, 92).

Tr. 41. The ALJ provided this summary:

[B]ased on a review of the medical evidence of record, as well as [Brock]'s testimony at the hearing and the record as a whole, the undersigned finds the evidence contained in the record does not support [Brock]'s allegations of totally incapacitating symptoms. [She] has retained the capacity to perform medium work, with minor non-exertional limitations, throughout the period under consideration. [Brock] has not demonstrated that the medical evidence supports greater limitation than included in the [RFC].

Tr. 41.

Contrary to Brock's argument, the ALJ properly evaluated Dr. Cieply's and L.M.H.C. Bliss's opinions, and substantial evidence supports the ALJ's finding that the opinions were unpersuasive.

The ALJ properly considered the persuasiveness of Dr. Cieply's opinion. The ALJ explained that he was not persuaded by Dr. Cieply's opinion because Dr. Cieply provided no opinion of functioning, noted a suggestion of over-reporting, and identified inconsistencies between his evaluation findings and Brock's reported severity of symptoms. Tr. 40. The ALJ found that the record fails to support Dr. Cieply's statement that Brock is "in a very overwhelmed state" and contains documented exaggeration on numerous occasions. Tr. 40 (citing Exhibits B4F; B12F/91, 103, 121, 140, 151; B26F/16, 19, 58, 60; B30F/8). The ALJ found that the evidence shows Brock can interact

17

with people she knows and was characterized as comfortable, pleasant, and cooperative, Tr. 40 (citing Exhibits B1F/149–150, 209–210; B2F/15–16; B3F/5; B4F/6, 12; B9F/3, 22; B10F/18–21, 32–37, 40–44; B11F/31; B12F/2; B17F/61; B21F/25; B25F; B27F/5; B37F/12); she interacted appropriately with the consultative examiners and was cooperative during the appointments, Tr. 40 (citing Exhibits B22F, B23F); she helped her mother care for a sick friend for over a year, Tr. 40 (citing Exhibit B26F/2, 16, 92); and she adapted her daily activities to accommodate her limitations, suggesting she has the ability to adapt to change, Tr. 40 (citing Exhibits B5E, B6E, B10E, B12E).

The ALJ properly considered the persuasiveness of L.M.H.C. Bliss's opinion. The ALJ explained that he was not persuaded by L.M.H.C. Bliss's opinion because he found the "marked" and "extreme" limitations in functioning were unsupported by the mental health treatment records, and L.M.H.C. Bliss "did not provide information to explain the ratings of marked and extreme difficulty." Tr. 41. The ALJ explained that he found the opinion was inconsistent with the overall record for reasons similar to those he provided for Dr. Cieply's opinion: Brock interacted appropriately with the consultative examiners and was observed throughout the record as "very pleasant and cooperative," Tr. 41 (citing Exhibits B1F/149–50, 209–10; B4F/6; B10F/18–21, 32–37; B12F/2; B21F/25; B22F; B23F; B27F/5; B37F/12); she helped her mother care for a sick friend for over a year, Tr. 41 (citing Exhibit B26F/2, 16, 92); and she was able to interact with people she knows and was characterized as comfortable during appointments, Tr. 41 (citing Exhibits B2F/15–16; B3F/5; B4F/12; B9F/3, 22; B10F/32–37, 40–44; B11F/31; B17F/61; B25F; B37F/12). He also determined that the opinion was inconsistent with Brock's reported daily activities of "going shopping all around town with her mother, multiple arts and crafts projects, tending herb gardens, research of

symptoms and other areas of interest, going to the Tampa Aquarium with family, [and] attending an art exhibition[.]" Tr. 41 (citing Exhibits B1F/173; B12F/55, 61, 67; B26F/2, 16, 19, 92).

Brock argues that the ALJ's determination that L.M.H.C. Bliss did not provide information to explain the "marked" and "extreme" ratings is incorrect because the evaluation form defines the words. Doc. 15 at 12. She complains about the finding that Bliss's treatment notes do not support marked and extreme limitations in functioning based on the absence of evidence to support marked difficulty getting along with the general public, arguing that Bliss was "familiar enough with [her] mental limitations to draw this conclusion due to the lengthy and consistent treatment." Doc. 15 at 12. The arguments are unpersuasive. Even with the form's definitions, why L.M.H.C. Bliss chose the ratings is unexplained. *See* Tr. 1752–53. Moreover, as the Commissioner observes, through the RFC, the ALJ accounted for Brock's problems with getting along with the general public by limiting her to jobs involving no interaction with the public. Doc. 20 at 11; *see* Tr. 23.

Brock argues that the ALJ's reasons for finding Dr. Cieply's report unpersuasive are inaccurate or insufficient. Doc. 15 at 16. She contends that Dr. Cieply assigned functional limitations in his evaluation because he "indicate[d] 'marked' and 'severe' symptoms related to her depression and anxiety" and he "assigned social limitations describing anger when overwhelmed or acting out, or when something goes wrong." Doc. 15 at 16 (citing Tr. 630–32). This argument is also unpersuasive. Dr. Cieply assigned no functional limitation in the evaluation. *See* Tr. 621–32. Using "marked" and "severe" to describe Brock's symptoms relating to an attention deficit hyperactivity disorder test, *see* Tr. 628, is not the same as providing an opinion

19

about necessary limitations. Nor is the statement that Brock "is at risk for social difficulties based on possible angry cognitions, moods, behaviors, or fantasies, usually intrusive and occurring at unwanted times," or his description of Brock's anger when overwhelmed or acting out. *See* Tr. 630–32. Moreover, as the Commissioner observes, the ALJ acknowledged Brock's social difficulties and accounted for them in the RFC by limiting her to jobs involving no interaction with the public, no more than occasional interaction with supervisors and coworkers, and no participation in tandem tasks. *See* Doc. 20 at 11 (citing Tr. 23).

Brock argues that the ALJ's decision suggests her over-reporting and exaggeration of symptoms was malingering when it is actually a symptom of her personality disorder. Doc. 15 at 17–18. As the Commissioner persuasively responds, "[T]he ALJ acknowledged [Brock]'s mental impairments, finding that her severe impairments included a personality disorder, depression, anxiety, and PTSD (Tr. 19). The ALJ did not find that [Brock] was malingering; he simply found that [her] description of the intensity, persistence, and limiting effects of her symptoms was undermined by her much-remarked-upon tendency to exaggerate (Tr. 23)." Doc. 20 at 11.

Brock argues that the fact that she "was able to behave appropriately while in doctors' offices does not translate to a finding that she could respond appropriately when in a work environment, interacting with co-workers, supervisors and the public." Doc. 15 at 13. This argument overlooks that the RFC limits Brock to "no interaction with the public" and only "occasional interaction with coworkers and supervisors." *See* Tr. 23. In any event, a finding that behaving appropriately in doctors' offices suggests some ability to behave appropriately in other contexts is supported by substantial evidence.

Brock argues that her ability to interact appropriately at her providers' offices and with the consultative examiners, and the fact that she "happened to be oriented with normal memory and appropriate mood and effect," are not evidence that undermines a treating or non-treating physician's opinion or any other source opinion. Doc. 15 at 17. She relies on *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094, 1103 (11th Cir. 2021), and *Richey v. Social Security Administration, Commissioner*, No. 22-11595, 2023 WL 4013525, at *3 (11th Cir. June 15, 2023). The Eleventh Circuit decided each case under the pre-revision guidelines that required an ALJ to consider opinion evidence under the treating-physician rule. *See Simon*, 7 F.4th at 1104 n.4 & 1107 (applying the treating-physician rule); *Richey*, 2023 WL 4013525 at *2 n.2 & *3 (explaining the treating physician rule; "[T]he ALJ's decision is not supported by substantial evidence as to Dr. Boxley because he did not identify good cause to discount her opinions." (citing *Simon*, 7 F.4th at 1105–06)). In any event, the ALJ did not reversibly err in considering Brock's interactions in determining the persuasiveness of opinions. Moreover, in addition to those interactions, the ALJ considered how Brock appeared at the administrative hearing, when the ALJ could personally observe Brock's social and communication skills. Tr. 22.

Brock complains that the ALJ's statements about her activities of daily living mischaracterize the extent to which she did those things. Doc. 15 at 18. She cites other evidence to support her complaint. *See* Doc. 15 at 18. A review of the exhibits to which the ALJ cites ("Exhibits B1F/173; B12F/55, 61, 67; B26F/2, 16, 19, 22, 92") shows no mischaracterization:

- B1F/173 (Tr. 525) L.M.H.C. Bliss's 9/15/2020 progress note: "[Brock] presented as bright, showing off handmade crafts and artwork that she has been doing."

21

- B12F/55 (Tr. 973) L.M.H.C. Bliss's 3/23/2022 progress note: "[Brock] keeps busy with her many art projects and plants."

- B12F/61 (Tr. 979) L.M.H.C. Bliss's 3/30/2022 progress note: "[Brock] processed events from her week today, including attending a spectacular art exhibition."

- B12F/67 (Tr. 985) L.M.H.C. Bliss's 4/6/2022 progress note: "[Brock] reported [she] remains active with art[s], crafts[,] and gardening."

- B12F/133 (Tr. 1051) L.M.H.C. Bliss's 7/13/2022 progress note: "[Brock] shared she and her mother had spent the day traveling the area shopping and having fun."

- B26F/2 (Tr. 1506) L.M.H.C. Bliss's 8/24/2022 progress note: "[Brock] has been helping her mother provide additional care to a friend in an [assisted living facility (ALF)] by attending to her at the ALF and by accompanying her to medical appointments."

- B26F/16 (Tr. 1520) L.M.H.C. Bliss's 11/2/2022 progress note: "[Brock] shared a great deal of frustration around her mother's friend whom she and her mother are monitoring and helping in an ALF as her mental and physical abilities decline."

- B26F/19 (Tr. 1522–23) L.M.H.C. Bliss's 11/9/2022 progress note: "[Brock] and her boyfriend will meet family members at the Tampa Aquarium but will leave if/when they become too stimulated or overwhelmed. Elements of exaggeration and emphasis on dogmatic demands were again brought forward but this time client ignored the information."

- B26F/22 (Tr. 1526) L.M.H.C. Bliss's 11/23/2022 progress note: "[Brock] … had a good time with her boyfriend's family in Tampa which had been a worry for her. [She] appears happier when there are family gatherings that go well. Current family events were reviewed and [she] developed plans to create positive outcomes for upcoming get[-]togethers."

- B26F/92 (Tr. 1596) L.M.H.C. Bliss's 10/11/23 progress note: "[Brock] presented as somewhat anxious, scared[,] and upset. She shared the situation of the declining cognitive processes of her mother's close friend who [she] assists with care. [She] stated that she is helping staff learn to deal with her mother's friend more appropriately[.]"

Citing other evidence, *see* Doc. 15 at 18, Brock contends that her activities of daily living "do[] not translate to being able to perform in a work setting," Doc. 15 at 19. But the ALJ is the one who had to evaluate that and the other evidence to make findings, which this court will uphold as supported by substantial evidence. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021) (explaining that a court affirms a decision supported by substantial evidence and may not reweigh evidence or decide the facts anew). Brock's reliance on *Simon* and *Richey* is again misplaced. *See* Doc. 15 at 19. In each case, the Eleventh Circuit applied pre-revision guidelines when finding that the ALJ failed to explain how the claimant's activities of daily living sufficiently discredited a treating physician's opinion. *See Simon*, 7 F.4th at 1108; *Richey*, 2023 WL 4013525, at *3. In *Schink*, the Eleventh Circuit found that the ALJ's conclusion that the claimant had only a "mild" limitation in his activities of daily living was not substantially supported by the evidence. 935 F.3d 1245, 1266 (11th Cir. 2019). The Eleventh Circuit stated that the claimant's ability "to feed and clothe himself, walk a dog, and watch television [said] very little about whether he suffered from a severe mental impairment or about his ability to function in a stressful work setting." *Id.* Here, the ALJ's finding that Dr. Cieply's and L.M.H.C. Bliss's opinions were inconsistent with Brock's reported daily activities is supported by substantial evidence.

Finally, Brock contends that the ALJ erred by reciting the medical evidence before the persuasiveness analysis and "failing to link those findings" to the analysis. Doc. 15 at 19–21. She states, "An ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for those decisions to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence." Doc. 15 at 19–20 (citing *Himes v. Comm'r of Soc. Sec.*,

585 F. App'x 758 (11th Cir. 2014)). She states, "Other courts have found error when the ALJ failed to build an 'accurate and logical bridge' between his findings and the conclusions he reached." Doc. 15 at 20 (citing, in this order, *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021); *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-1515-RBD-DCI, 2020 WL 1957597, at *6 (M.D. Fla. April 8, 2020); *Michael v. Saul,* No. 2:20-cv-238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021); *Moore v. Colvin*, 743 F.3d 1118, 1112 (7th Cir. 2014); *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017); *Lewis v. Berryhill*, 858 F.3d 858, 867–68 (4th Cir. 2017); *Owens v. Heckler*, 748 F.2d 1511, 1514–16 (11th Cir. 1984); *Holt v. Sullivan* 921 F.2d 1221, 1223 (11th Cir. 1991); and *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013)). Neither the regulations nor binding precedent use the term "logical bridge." As shown by the above excerpts from the decision, the ALJ considered the record as a whole and adequately explained his consideration of the opinion evidence.

The Commissioner's decision is **affirmed**. The clerk is directed to enter judgment for the Commissioner of Social Security and against Kadin Brock and close the file.

**Ordered** in Jacksonville, Florida, on September 29, 2025.

Patricia D. Barksdale
United States Magistrate Judge